LYNCH (SEDGWICK v.). See Cases Nos. 12,614 and 12,615.

LYNCH (UNITED STATES v.). See Case No. 15,648.

LYNCH (WASHINGTON v.). See Case No. 17,231.

## Case No. 8,637a.

### The LYNCHBURG.

[Blatchf. Pr. Cas. 49.] [1]

District Court, S. D. New York. Aug. Term, 1861.[2]

PRIZE:— ACTION — ESSENTIALS OF ANSWER—CONDEMNATION—LIEN FOR ADVANCES—BILL OF LADING.

1. What statements are necessary in an answer and claim.

1 [Reported by Samuel Blatchford, Esq.]
2 [Affirmed in Case No. 8,639.]

2. Vessel and cargo condemned as enemy property.

3. What is necessary to be proved by parties claiming a lien for advances on enemy property captured as prize in an enemy vessel.

4. In prize law, a bill of lading transmitted to a party to cover his advances on cargo shipped does not pass the title to the cargo.

In admiralty.

BETTS, District Judge. The schooner Lynchburg was captured, with the cargo laden on board of her, on the 13th of May, 1861, at the mouth of Chesapeake Bay, off Cape Henry, by the United States steamship Quaker City, under the command of Acting Master S. W. Mathews, and both were libelled by the United States and other captors as prize of war. It is alleged that the schooner and cargo were enemy's property, belonging to citizens and residents of the state of Virginia, and, also, that when captured they were attempting to violate the blockade of the port of Richmond.

Three several claims are interposed in defence to the libel in this suit. Richard O. Haskins and nineteen others answer and claim as owners of the vessel, being all of Richmond, and admit that the schooner and part of her cargo were owned by residents within the state of Virginia, as charged in the libel. They deny an intention to violate any blockade of that port, or knowledge or notice of such blockade. They also deny that the blockade was laid by any competent authority. Charles T. Wortham & Co., also of Virginia, claim to be owners of 1,008 bags of coffee, part of the cargo of the schooner, and take issue upon other allegations of the libel; and they also claim an interest in 504 other bags of coffee, part of said cargo, marked "Ma." Charles H. Pierson, as agent for John Currie and others, also interposes an answer and claim, as owners of the schooner and carriers of the cargo, and claims for their interest as carriers only. No test oaths accompany either of the answers of the claimants, except the answer and claim of Brown Brothers & Co., who intervene upon a transfer or lien of 2,045 bags of coffee, part of the aforesaid cargo. They allege, in substance, that they made an advance of credit to Maxwell, Wright & Co., about the 16th of November, 1860, to the amount of £20,000, for the purchase of Brazilian produce, under which credit the said firm of Maxwell, Wright & Co. drew drafts of the claimants for £6,090, on the condition, expressed therein, that the coffee purchased should be held by the claimants until their advances were reimbursed thereon. The claimants being loyal citizens, and the said Maxwell, Wright & Co. neutrals, it was claimed that such arrangement between them vested the possession and ownership of the coffee in the claimants until the repayment of their advance. On a subsequent motion, before the court, and also on the final hearing in court, it was admitted

by the United States attorney that 1,551 bags of said coffee covered by that title should be released and discharged from this arrest and suit in favor of Brown Brothers & Co.

The answers and claims put in to the libel are drawn up with very unnecessary diffuseness. They employ the formalities in statement and defence perhaps appropriate for bills for discovery in equity, but presenting no matters necessary for them to maintain by pleadings in defence to a prize suit. Indeed, each claim includes, in a single clause, all the answer called for in prize actions, which is a brief assertion that the property seized is not liable to condemnation and forfeiture. There is no controversy, on the trial, that the schooner was owned by residents in Virginia, nor that 1,008 bags of coffee, part of her cargo, belonged to Wortham & Co., claimants, also residents there. The further defence is, that the residue of the cargo (504 bags) is subject to the title or lien of Brown Brothers & Co., not enemies. The vessel was registered in Richmond, January 25, 1861, as the property of owners residing at that place; and was captured at sea on her voyage to her home port. The rule sufficiently declared in preceding suits on this hearing, and made applicable to this one, subjects the vessel to condemnation and forfeiture for that cause, as prize of war. The answer of Charles T. Wortham & Co., claiming to be owners of 1,008 bags of coffee, and also to have an interest in the 504 other bags of coffee, as above stated, part of the cargo of the vessel, and admitting themselves to be residents of Virginia, places their whole interest in the cargo in the same predicament, and for like cause, as also all portions of the cargo, if any, not claimed or falling within the claim of Wortham & Co. The United States district attorney having consented to the restoration of 1,541 bags of coffee to Brown Brothers & Co., as belonging to them, and being neutral property, and no proof of any other claim than that of Wortham & Co. being before the court for any residue of the cargo seized, the judgment of the court will be entered in favor of the libellants, against both the schooner and the residue of cargo not restored, as above stated, with costs.

On the attendance of counsel before the judge, subsequent to the above order for judgment in the case of the Lynchburg, to settle the terms of the decree to be entered therein, it was insisted on the part of the claimant, Brown Brothers & Co., that the decree ordered was defective, in omitting to direct separately the condemnation of 504 bags of coffee, composing part of their claim of 2,045 bags mentioned in the pleadings, or its restoration to them. The judgment was given by the court under the impression that the claim of Brown Brothers & Co. had been satisfied by the restoration to them of 1,541 bags of coffee, or otherwise, in connexion therewith, (and so it is insisted by the United States attorney was the fact,)

and that no contest remained in court with these claimants, in respect to the residue of the 2,045 bags for which they originally intervened in the cause; and that, consequently, no other claim to this portion of the coffee remained to be considered than that of C. T. Wortham & Co., or some unknown owner at the port of destination. The counsel for the claimants, Brown Brothers & Co., however, insisting that their claim to 504 bags of coffee, (the residue of the 2,045 bags,) alleged to have been hypothecated as security for their advance for its purchase, yet remains undetermined and outstanding, and that they are now entitled to a decree for the restoration of that residue to them, as their absolute property, by virtue of the shipment under the original bill of lading, the court has re-examined the pleadings and proofs in the cause, with a view to rectify the error, if one has occurred, before fixing the terms of the decree, and entering final judgment thereon. On reconsidering the pleadings and proofs, I am of opinion that the decree, as rendered, is technically correct: (1) Wortham & Co. also claimed the 504 bags of coffee embraced in the general claim of Brown Brothers & Co. (2) Brown Brothers & Co. do not prove the amount of their advances actually paid in the purchase of the coffee claimed by them, nor do they specify such amount in their claim and answer, or in the test oath appended thereto. (3) No proof is given by the claimants that the value of the 1,541 bags of coffee restored to them is not equivalent to the sum of their advances used in purchasing the whole 2,045 bags; and the reasonable presumption is, that the restoration of two-thirds of the quantity consigned as security satisfied the whole credit. (4) The claim to an absolute ownership of the 2,045 bags was placed before the court in the oral argument, and in the written points filed in the cause by the counsel for the claimants, upon the proposition of law, that a bill of lading, transmitted to them by the shipper to cover advances, passed to them the title to the cargo purchased therewith. If this doctrine be correct as to mere commercial transactions, it does not prevail in prize courts, in derogation of the rights of captors, when the interest of the claimants is only a debt, although supported by liens equitable and tacit, or legal and positive, even of the character of bottomry bonds, when not signified on the ship's papers at the time of her capture. The Frances Irvin's Claim, 8 Cranch [33 U. S.] 418; The Tobago, 5 C. Rob. Adm. 218; The Marianna, 6 C. Rob. Adm. 24. (5) Here, the vessel at enemy's bottom; the bill of lading consigned the cargo to order or assigns at large, at an enemy's port, and, on the surrender of the principal portion of the consignment to the claimants, no other evidence was given in establishing the facts that the remainder of the shipment was owned by them, or yet stood under hypothecation to them on the bill of lading.

If, then, the court concluded, erroneously, that the whole interest in the shipment had been satisfied and abandoned on the surrender of 1,541 bags of coffee to the claimants, yet the judgment is correct as it was rendered, including the condemnation of the 504 bags, because, by intendment of law, that portion belonged to Wortham & Co., and was not shown by the proofs to be exempt from capture as prize.

The decree in this case was affirmed by the circuit court, on appeal, July 17, 1863 [Case No. 8,639], as to the vessel and cargo, except as to the 504 bags of coffee. As to those, the claimants were allowed to give further proofs. Ultimately the 504 bags were restored, by consent, to the claimants.

[For proceedings incidental to this suit, see Case No. 8,638.]